JASON M. FIELDS,

        Plaintiff,

   v.                               Case No. 17-C-1506

LIEUTENANT TODD A. ZOLKOWSKI,
OFFICER TED M. VANDENBERG,
& LIEUTENANT RUSSELL D. BLAHNIK,

        Defendants.

---

## DECISION AND ORDER

---

Plaintiff Jason Fields filed this pro se civil rights action against three Grand Chute law enforcement officers alleging they used excessive force in effecting his arrest at the Extended Stay Motel in Grand Chute, Wisconsin on March 8, 2015. His complaint also asserts state law claims for battery and intentional infliction of emotional distress. Fields filed the case in the Circuit Court for Outagamie County, but the defendants removed it to federal court asserting jurisdiction under 28 U.S.C. § 1331. The case is before the court on cross motions for summary judgment. ECF Nos. 14, 23. Fields has agreed to voluntarily dismiss his state law claims since he failed to comply with the state law governing notice. Because a dispute as to the material facts exists as to the remaining federal claim, both motions will be denied.

## I. BACKGROUND

Shortly after midnight on March 8, 2015, Lieutenant Todd Zolkowski and Officers Ted Vandenberg and Russell Blahnik of the Grand Chute Police Department were dispatched to the Extended Stay America motel to arrest Fields, who was staying at the motel with a woman and a

child.  Fields had three outstanding warrants for his arrest on felony charges of forgery, bailjumping and fraud.  *Id*. at ¶¶ 5, 8, 37.  The officers were advised by dispatch that Fields and the woman were probably drinking and that Fields had a weapon and would probably run.

Armed with this information, the defendants, dressed in their uniforms and with their badges displayed, stationed themselves in the hallway outside Field's motel room and had the night auditor at the motel call the room and tell Fields that there was someone waiting for him.  As Fields stepped outside the room, Officer Blahnik stated "police department."  Fields made the statement "the police" and quickly stepped back into the room.  With the door closing, Lieutenant Zolkowski reached in and attempted to grab Fields.  The ensuing struggle which continued out into the hallway was partially captured on the officers' body cameras and downloaded to a disc submitted in support of the defendants' motion.  ECF No. 16, Ex. F.  Fields contends that without provocation or justification, Officer Vandenberg grabbed him and slammed him up against the wall, causing injury to his face and neck.  ECF No. 25 ¶ 8. The video depicts Fields struggling with the officers and insisting that he is not resisting, while at the same time failing to comply with their command that he stop struggling with them and face the wall so they can place handcuffs on him.  At one point, Fields is taken to the floor where he is eventually handcuffed, searched, and taken into custody.  In the course of the struggle, Fields sustained abrasions to the side of his face and to his chin.

Fields was later charged in Outagamie Circuit Court with bailjumping and resisting arrest based on the events described above.  Following a trial at which Fields and each of the defendants testified, a jury returned a verdict finding Fields not guilty of each count.  This lawsuit followed.

Fields contends that the defendants falsely claimed he was resisting as a pretext for using excessive force against him and causing him unnecessary pain and suffering.  Pl.'s Resp. to Defs.'

Proposed Findings of Fact, ECF No. 34, ¶ 23. He argues that the jury's verdict in his favor in the criminal case conclusively establishes that he did not resist and thus the defendants' use of force against him was unreasonable. The defendants deny that the jury verdict in the criminal case has any preclusive effect and contend that the force used to effect the arrest was reasonable. Alternatively, the defendants argue that they acted in good faith and are therefore immune from liability.

## II. LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

"At the summary judgment stage, the facts must be viewed in the light most favorable to the nonmoving party only if there is 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). However, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

## III. Discussion

### A. Issue Preclusion

Fields argues his acquittal for resisting an officer precludes the defendants from arguing that he was resisting them while they arrested him. The Court must apply Wisconsin law to determine whether a Wisconsin state court judgment has a preclusive effect. *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006) ("Whether a given decision has preclusive effect depends on state law") (citing 28 U.S.C. § 1738); *see also Stericycle, Inc. v. City of Devalan*, 120 F.3d 657, 658–59 (7th Cir. 1997) ("Federal courts must give Wisconsin judgments the same preclusive effect as would the state courts of Wisconsin."). "Issue preclusion . . . 'is designed to limit the relitigating of issues that have been actually litigated in a previous action.'" *Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 219, 594 N.W.2d 370 (1999) (quoting *Lindas v. Cady*, 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994)) (remaining citations omitted). The Wisconsin Supreme Court has held that the doctrine of issue preclusion (collateral estoppel), applies "'where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and *where the controlling facts and applicable legal rules remain unchanged . . . .*" *State ex rel. Flowers v. Dep't of Health & Soc. Servs.*, 81 Wis. 2d 376, 387, 260 N.W.2d 727 (1978) (quoting *C.I.R. v. Sunnen*, 333 U.S. 591, 599 (1948) (emphasis in original).

*Flowers* is dispositive as to how a Wisconsin court would treat whether Fields' acquittal would have preclusive effect on the issue of whether he was resisting officers during a civil case. In *Flowers*, a defendant on parole was charged with reckless use of a weapon and battery. The first

4

charge was dismissed for lack of evidence, and a jury acquitted him of the second. *Id*. at 383.

Nevertheless, the defendant's parole was revoked on these and other grounds. *Id*. Flowers alleged

that the government was collaterally estopped from using the conduct underlying the charges on

which he was acquitted as the basis of his parole revocation. Noting that the burden of proof in a

criminal case was beyond a reasonable doubt, whereas the burden at a parole revocation was only

a preponderance of the evidence, the Wisconsin Supreme Court held that the acquittal could not

have a preclusive effect. *Id*. at 387–89; *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 28(4).

The Court explained that the "'bundle of legal principles' is not the same because different burdens

of proof apply, and the paramount considerations are different." *Id*. at 387. The Court continued:

> Collateral estoppel [issue preclusion] applies only where it is reasonably clear that the issue in question has in fact been decided. On the present record it is impossible to ascertain whether the question of possession was determined, or whether the charge was dismissed because there was insufficient evidence of recklessness.

*Id*. at 389. It follows that Fields cannot use his acquittal to preclude the defendants from arguing

that Fields was resisting at the time they attempted to place him under arrest.

## B. Excessive Force

Under the Fourth Amendment, the "force used to effect an arrest must be objectively

'reasonable.'" *Chelios v. Heavener*, 520 F.3d 678, 689 (7th Cir. 2008). To determine whether the

force used was reasonable, the court must engage in a "careful balancing of the nature of and quality

of the intrusion on the individual's Fourth Amendment interests against the countervailing

governmental interests at stake." *Id*. (quoting *Morfin v. City of E. Chi.*, 349 F.3d 989, 1004 (7th

Cir. 2003)). The court must consider the facts and circumstances of each particular case, including

the severity of the crime at issue, whether the suspect poses a threat to the safety of officers or

others, and whether he is actively resisting arrest. *Id.* (citing *Morfin*, 349 F.3d at 1004–05 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979))). Under the reasonableness standard, the Court must also recognize "that 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). An officer's use of force is unconstitutional if "judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Id.* (quoting *Payne v. Pauley*, 337 F.3d 767, 778 (2003)).

Here, the video evidence establishes that upon seeing the officers in the hallway, Fields immediately attempted to re-enter the room and close the door. Given the three warrants for Fields' arrest and the information the defendants had that he had a weapon and was likely to run, it was entirely reasonable for the officers to use force to apprehend Fields before he could close the door on them. Although Fields contends that Officer Vandenberg grabbed him "without provocation or justification," this is a legal conclusion which I can properly reject on the basis of the undisputed facts and the video evidence. It is over what happens next that the dispute exists.

Fields alleges that the body camera videos, his testimony, and his acquittal for resisting arrest show that the officers' actions after pulling him into the hallway were unreasonable and, thus, unconstitutional. The defendants allege that the body camera videos show that Fields stepped back and was actively resisting arrest. Unfortunately, the body camera videos are not as conclusive as either side believes, which is evident by the fact that both sides insist that the videos are sufficient to grant summary judgment in their favor. While the video shows the officers alerting Fields to their presence, Fields saying "oh it's the police," and Fields stepping back from the hallway back towards

6

the room, it does not clearly show either of the scuffles in which Fields alleges the defendants unnecessarily slammed him into the wall or onto the floor, causing injury to his face and neck. Additionally, given the position of the body cameras, most of Fields' actions are not visible. As such, there is still a material dispute as to Fields' actions and whether he was actively resisting officers.

To be sure, Fields does not appear to be following their commands. For example, when they had him facing the wall and were trying to place the handcuffs on him, Fields kept turning around telling the officers that his three-year daughter was in the room. The fact that his daughter was in the room was, of course, irrelevant, since her mother or Field's girlfriend was in the room with her and Fields was going to jail. Nevertheless, Fields continued to argue with the officers. The officers eventually put him face down in the hallway so that they could place the handcuffs on him. Fields claims that they unnecessarily slammed him up against the wall and then sat on his face and neck when he was on the floor. Though the video does not show these acts, it does not conclusively demonstrate they did not occur. I therefore cannot simply reject Fields' version of the facts.

While it is true that ""[n]ot every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers,' . . . violates the Fourth Amendment," *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)), the Seventh Circuit has repeatedly cautioned district courts that "that summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010); *see also Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005)(stating "since the *Graham* reasonableness inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment

as a matter of law in excessive force cases should be granted sparingly"); *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir.2009) (same). That is the case here. Given the rule requiring that the evidence be viewed in the light most favorable to the non-moving party, summary judgment cannot be granted on behalf of either party.

## C. Qualified Immunity

Defendants assert that even if their actions are deemed unreasonable, the doctrine of qualified immunity shields them from liability. The doctrine of qualified immunity protects offers "who act in ways they reasonably believe to be lawful" from liability. *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987)). In order to determine whether qualified immunity applies, the Court must address two questions to determine whether the doctrine of qualified immunity applies; although, the Court need not determine them in order. *Id*. at 691; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the two questions for qualified immunity are no longer required to be addressed in order). The Court must determine whether the facts, when taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right and the Court must determine whether that constitutional right was clearly established at the time of the alleged violation. *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). This right must be defined with adequate specificity. *Kisela v. Hughes*, 138 S. Ct. 1148, 1151 (2018).

At the time of the incident, it was clearly established that an officer may not use excessive force against an individual during an arrest. *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007). It was also clearly established that using a significant level of force on a non-resisting or passively resisting individual constitutes excessive force. *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995); *see also Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015) (denying

qualified immunity to officers who slammed a non-resisting detainee's head into a concrete bunk and used a taser while he was handcuffed); *Sallenger v. Oakes*, 473 F.3d 731, 741–42 (7th Cir. 2007) (denying qualified immunity to officers who improperly hobbled and repeatedly struck a non-resisting suspect); *Broadfield v. McGrath*, No. 17-3071, __ F. App'x ___, 2018 WL 2722504, at *8–9 (7th Cir. June 6, 2018) (denying qualified immunity to officers who pressed a non-resisting detainee's neck into concrete, thus preventing him from breathing, and carried him hogtied to his cell, thus injuring his wrist).

Moreover, because there is a material dispute as to whether Fields was resisting arrest when the force was used against him, summary judgment is inappropriate. "'Because the facts are in hot dispute, the officers cannot seek pretrial refuge behind a claim of qualified immunity.'" *Alicea v. Thomas*, 815 F.3d 283, 292 (7th Cir. 2016) (finding it improper to determine qualified immunity when there was a material dispute as to whether plaintiff was resisting arrest when force was used upon him) (quoting *Dufour-Dowell v. Cogger*, 152 F.3d 678, 680 (7th Cir. 1998)).

## IV. CONCLUSION

Based on the foregoing analysis, both Plaintiff's motion (ECF No. 23) and Defendants' motion (ECF No. 14) are **DENIED**, and Plaintiff's federal claim remains for trial. Plaintiff's state law claims, however, are dismissed. The Clerk is directed to set this matter on the Court's calendar for a telephone scheduling conference.

Dated this __2nd__ day of August, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court